Curia, per
Johnson, J.
The court concur in the decree pronounced by the chancellor, and generally for the reasons given. It has been thought advisable however to use the occasion furnished by this case, to lay down, with as much precision as the subject will permit, a few rules applicable to the questions involved in it; and which have become the more necessary under the recent modification and present organization of this court. And first, as regards the determination ofimmixed questions of fact by this court, especially in relation to the adjustment of accounts.
*379 *The evidence in relation to these matters is almost invariably taken by the commissioner, and, on exceptions taken to this report, is carefully revised by the chancellor on the circuit, in the presence of the parties, and in the neighborhood where the cause originated; and altogether under circumstances the most favorable to any explanations or corrections that may be required : and if, under such circumstances, a chancellor is liable to err, how much the more is this court, when, on an appeal, they are called on to review his judgment, without any other aids than are furnished by short notes, which from their nature must be imperfect, and such explanations as counsel are disposed to accord, by whom the most positive affirmations on the one side are too frequently met with as positive denials on the other. It is possible, but almost impracticable, to put down the very words of a witness; but it requires a master’s hand to give expression and life : and it may be safely affirmed that the difficulty of ascertaining their true meaning increases in a progressive ratio at every stage through which they pass. Apart then from, any consideration of convenience, and the utter impracticability of investigating all the minutise of a complex account and laboring through an ill-shapen and undigested volume of evidence, as a matter of expediency calculated to promote the ends of justice, this court would not be disposed to intermeddle with them.
In theory, courts, possessing appellate powers only, were not designed for the determination of cases, except as an incident, but for the purpose of defining and settling principles; and a departure from this course can only be justified by the concurring testimony of all the world. That our frailties, passions, and prejudices enter into and control the operations of the most perfect systems the human wisdom has ever been able to devise, is most clear; and without some check on their influence, *there would, in reference to all judicial system, be no security for life, liberty or property: and hence the power which appellate courts, in the last resort, claim and exercise in matters of fact, as well as of law.
The exercise of this power without something like settled rules, and defined land marks, would be productive of greater evils than those it was intended to correct; because, as has been already remarked, an appellate court is more liable to err on account of the imperfection of the sources from whence its information is derived. And some attempts have been made to circumscribe it within proper metes and bounds, particularly in relation to the trial by jury. Thus it has been well said, that when there is evidence on both sides the court will not weigh it; for that belongs to the jury; and their view of it is conclusive. And so, unless it is apparent that they have acted under a mistake, or have been so palpably influenced by some improper motive that the erroneousness of their conclusion is such as to strike the understanding with conviction at once, the court will not set aside a verdict.
Now all the reasoning on which these rules are founded, applies with equal, indeed with greater force, to a case coming up under a report from the commissioner, through the medium of the chancellor; because we are removed one stage further from the original source: and the court feel warranted in adopting these rules for its future government.
*380 In the adjustment of an account; whether the party, charged with a particular item, was legally bound to pay, — or whether legal evidence, to prove it, has been rejected, — or incompetent evidence has been admitted, may, in general, be regarded as naked questions of the law, and come up in a shape that is tangible to the court. But whether the party claiming it, has or has not paid it, is a question of of all the of and all the variety of circumstances, *which are found between the extremes of light presumption and demonstration; and any effort, on the part of this court to weigh them and adjust the balance, would subject it to insuperable difficulties and innumerable errors. Of this class are some of the items in this case, with which, for these reasons, the court will not intermeddle.
The right of the defendant to be remunerated for costs and expenses incurred in defending suits brought against him, in the character of executor, out of the funds of the estate, constitutes another question embraced by this motion.
The rule that an executor shall not be bound to pay them out of his own funds, unless they have been the result of his own misconduct or mismanagement, has been correctly laid down by the chancellor; and that, although the estate could not be benefitted by it, as inay be well illustrated by the facts connected with the complainants’ first exception. Reuben Sims, one of the legatees, filed a bill against the defendant for an account; and on the investigation of the accounts, it appeared that he had not only received all, but more than he was entitled to. Now, it is true that the estate could not, in any possible view, be benefitted by this suit; but it is equally clear, that the defendant was exposed to this situation by the circumstance of being executor for the estate; and he had committed no fault; and the result proved that he was wholly blameless. And it is but just that one who, in many instances, assumes a highly responsible and delicate trust, from mere motives of friendship, should be indemnified for loss incident to that situation; and against which it was impossible to guard. The fee paid to counsel for defending that case was, therefore, properly allowed.(a)
*The other items for costs and expenses incurred in defending law suits, noticed in the defendant’s third exception, and also in the complainant’s third exception, are disposed of by the rules before laid down. Whether they were incurred by the misconduct or mis-of the must be of from all the circumstances; and they have passed in review before a tribunal possessing more ample means, and in every respect more competent to decide them, than this court. And none of those circumstances have been made manifest which would authorize the interposition of this court.

Motion refused.

 See ante, M’Dowell v. Caldwell, p. 43; and Watts v. Watts, p. 77.